**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GARY W. RICHARDS, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>DIRECT ENERGY SERVICES, LLC,<br><br>*Defendant.* | No. 3:14-cv-1724<br><br><br>**CLASS ACTION COMPLAINT** |

1.     Plaintiff Gary W. Richards ("Plaintiff"), on behalf of himself and all persons similarly situated, by and through his attorneys, alleges as follows.

**INTRODUCTION**

2.     Plaintiff Gary W. Richards brings this action on behalf of himself and a class of all similarly situated customers against Defendant Direct Energy Services, LLC. ("Direct Energy") in Connecticut and Massachusetts, arising out of Direct Energy's unfair, deceptive, unconscionable and bad faith billing for "supplying" electricity to residential consumers.

3.     Direct Energy entices residential customers to sign up for its service by offering low initial rates for electricity.  When the "teaser rate" period expires, however, customers are rolled over into a month-to-month variable rate plan with exorbitant rates.

4.     Direct Energy represents in its marketing materials and in its contracts that it offers a "variable rate" electricity plan to residential consumers that is tied to the market rate in the wholesale power market.  However, contrary to Direct Energy's representations and obligations, Direct Energy consistently and improperly charges an extraordinarily high premium

rate for electricity *regardless* of fluctuations in the underlying market price.  Indeed, as set forth below, Direct Energy routinely charges its consumers as much as *four times* the underlying market rate, notwithstanding Direct Energy's representations that its variable rates "reflect" monthly wholesale electric prices.

5.      Specifically, Direct Energy's rates go *up* to match spikes in the underlying market price.  However, when the market price goes *down*, Direct Energy's rate remains at an inflated level several times higher than the market rate.  Through this scheme, Direct Energy subjects consumers to consistent and unlawful "heads I win, tails you lose" pricing.

6.      This unfair and deceptive scheme of charging inflated electric prices that match *increases* in the underlying market price while failing to pass-along *decreases* is intentionally designed to maximize revenue for Direct Energy.

7.      Plaintiff and other Direct Energy customers have been injured by Direct Energy's unlawful practices.  Accordingly, Plaintiff, on behalf of himself and the class, seeks damages, restitution and injunctive relief for Direct Energy's violation of state consumer protection statutes (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and unjust enrichment (Count III).

## PARTIES

8.      Plaintiff Gary W. Richards is a resident of Burlington, CT.

9.      Defendant Direct Energy Services, LLC. is a limited liability corporation organized under the laws of the State of Delaware whose principal place of business is located in Houston, Texas.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000 and the members of the Class are citizens of a different state than Defendant Direct Energy.

11.     This Court has personal jurisdiction over Direct Energy because Direct Energy has tens of thousands of customers in Connecticut and thereby conducts business in this state.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.     Energy Deregulation and the Role of Electric Suppliers

13.     In the late 90s and early 2000s, many states moved to deregulate at least part of the electricity supply services then performed by large public utilities.  Delivery of electricity to a consumer requires both the creation of electricity and the transmission of that electricity from the power plant to the consumer. The typical pattern was to require the public utilities to divest their power generation assets such as coal, gas and nuclear power plants.  But, the regulated utilities continued distributing power from these power plants to consumers through transmission lines.

14.     When deregulation occurred, the business of power *supply* was opened to competition and consumers were allowed to select the companies from whom they would purchase their power.  However, states generally set a "standard offer," available to all customers

in each public utility's service area.  In some states, such as Connecticut, the standard offer is a single, flat rate which is fixed for a period of months, while other states such as Massachusetts have both a fixed rate standard offer and a standard offer rate that varies each month.

15.     As a result of the deregulation of power supply, several different parties are now involved in the supply of electric power to residential consumers.  Certain companies, such as Dominion, produce electric power ("Generation Companies"). Other companies, such as Connecticut Light & Power ("CL&P") in Connecticut, distribute electricity from Generation Companies to the end user ("Distribution Companies").  Although some Generation Companies have sold power directly to consumers, including residential customers, most sell the power on the wholesale market to companies that market to retail customers ("Electric Suppliers").

16.     The market for wholesale power in the New England States is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called ISO New England (for "Independent System Operator"). ISO New England coordinates and directs the generation and flow of electricity throughout the region, ensuring that electric supply exactly meets demand throughout the network. The wholesale market managed by ISO New England determines where and when electricity will be made by Generation Companies and the wholesale prices that will be paid for that electricity through competitive bids.  "More than 500 companies participate in these markets, buying and selling between $6-$14 billion of electric power and related products annually."  http://www.iso-ne.com/about/what-we-do/three-roles/administering-markets. The bid process determines the Generation Company that will make each unit of electricity and the wholesale price each Energy Supplier will pay to each Generator for each unit of energy delivered to specific locations throughout the region.

17.     Electric Suppliers play a middleman role: they purchase power directly or indirectly from Generation Companies and sell that electricity to end-user consumers. However, Electric Suppliers do not **deliver** that electricity to consumers. Rather, Generation Companies deliver the electricity to Distribution Companies, which in turn deliver the electricity to the ultimate consumer. Electric Suppliers merely buy electricity at the wholesale rate and then sell that power to end-users with a mark-up. Thus, Electric Suppliers are essentially brokers and traders: they neither make nor deliver electricity, but merely buy electricity from the Generation Companies and re-sell it to end users.

18.     Direct Energy is an Electric Supplier. It buys and resells "Power Pool System" power purchased from the New England regional electricity market, not from specific power generation pants. As Direct Energy admits in its "Disclosure Label,"

> Your electricity is transmitted across the New England electric system, which receives electricity from power plants throughout the region to meet the requirements of all customers in New England. The "**New England Power Pool System Mix**" represents the percentage of power supply from each power source in the regional system. Suppliers are responsible for generating and/or purchasing electricity that is added to the electric system in an amount equal to your electricity use.

19.     Direct Energy's prices are not approved by states' regulatory authorities such as Connecticut's Public Utility Regulatory Authority ("PURA") or the Massachusetts Department of Public Utilities. Rather, Direct Energy and other Electric Suppliers are free to set their own rates for supplying electricity to consumers. And Direct Energy, like all other suppliers, relies upon the Distribution Companies to deliver the electricity it purchases on the wholesale market to its customers. The Distribution Companies charge separately for their distribution-related services, using rates that are reviewed and approved by the states' regulatory agencies.

20.     Electric Suppliers may contract with consumers to supply electricity on either a "Fixed" or "Variable" rate basis.   Under a Fixed contract, the Supplier agrees to supply electricity at a set rate for a certain number of months.

21.     Under a Variable rate contract, the Supplier may vary the rate it charges on a periodic basis (often monthly).

**B.     Direct Energy's Excessive Rates**

22.     Direct Energy has offered various Fixed and Variable rate plans, including contracts that charge a low promotional "teaser" rate which is fixed for a set number of months before automatically rolling into a Variable rate plan.

23.     Throughout its contracts, marketing materials and required disclosures, Direct Energy represents that its Variable rate plan is based upon the wholesale market rate.   Indeed, that is the entire hook by which Direct Energy attracts consumers to Variable rate plans.

24.     For example, in its answers to 'Frequently Asked Questions," Direct Energy only states that "[t]he variable rate may be higher or lower each month as determined by Direct Energy based on business or market conditions."

25.     Most importantly, Direct Energy's "Residential & Small Terms and Conditions" ("Terms and Conditions") also make this express link between the Variable rate charged by the company and the underlying wholesale market rate set by ISO-New England and charged by Generation Companies, stating:

> After the Initial Term and during the Renewal Period, the rate for electricity will be variable each month at Direct Energy's discretion. The rate may be higher or lower each month based on business and market conditions.

26.     Accordingly, a reasonable consumer would understand that Direct Energy's Variable rates fluctuate in a manner correlated with the underlying wholesale market rate, and that, although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased, enabling consumers to take advantage of market lows.

27.     Instead, and contrary to reasonable consumer expectation, Direct Energy used its Variable rates as a pure profit center, increasing the rates charged to class members when wholesale prices rose, but staying at a level as much as *four times* the wholesale market rates when the wholesale prices fell.

28.     For example, the chart below sets forth (1) the average wholesale price (in dollars per kilowatt hour) of electricity delivered to Connecticut for each month during the period from October 2013 through October 2014, as reported by ISO-New England; (2) the non-promotional variable rates Direct Energy charged to consumers in Connecticut for those same months represented by Direct Energy on its website; and (3) the resulting percentage premium that Direct Energy charged consumers over the wholesale rate on an average per-month basis:

| | NOV-13 | DEC-13 | JAN-13 | FEB-14 | MAR-14 | APR-14 | MAY-14 | JUN-14 | JUL-14 | AUG-14 | SEPT-14 | Oct-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Average Wholesale** | $0.0447 | $0.088 | $0.1664 | $0.1539 | $0.1092 | $0.045 | $0.0373 | $0.0381 | $0.0379 | $0.0305 | $0.0345 | $0.0329 |
| **Direct Energy** | 0.106 | $0.165 | $0.200 | $0.200 | $0.160 | $0.143 | $0.140 | $0.133 | $0.150 | $0.153 | $0.153 | 0.153 |
| Direct Energy Premium *ABOVE* Wholesale Price | 137% | 88% | 20% | 30% | 47% | 218% | 275% | 249% | 296% | 402% | 343% | 365% |

29.     The extreme divergence between the wholesale price paid by Direct Energy and the retail price it charged its Connecticut customers during the period from October 2013 through

October 2014 is likewise illustrated on the following graph (and, for purposes of comparison, the Standard Service Rate charged by CL&P during the same period):



30.     Accordingly, Direct Energy routinely charges class members a Variable electric rate that is as much as four times higher than the underlying market rate.  Additionally, upon information and belief based on the rates charged in Connecticut, Direct Energy's non-promotional variable rates haven't matched, much less beat, the standard offer fixed rates in over two years.

31.     Moreover, Direct Energy's essential representation to consumers concerning its Variable pricing plan –that the Variable rate is "market-based"– is patently false.  Although Direct Energy *increases* its Variable rate in response to *rising* wholesale prices (as illustrated in the period from November 2013 through January 2014 above), Direct Energy fails to *decrease* its prices in response to a *falling* wholesale market price.  For example, the average wholesale price dropped every month from January to May of 2014, ending the period at a price that was 78 percent lower than the January high.  During the same period, Direct Energy's price fell only

30%. Indeed, during the period from June to August, 2014, the average wholesale price declined approximately 20 percent, while Direct Energy's price actually ***increased*** by 15 percent.  As a result, Direct Energy's price premium was an incredible ***402 percent*** above the wholesale price in August of 2014.

32.     Moreover, as set forth in the Terms and Conditions, Direct energy has sole and unfettered discretion to impose a variable rate plan on customers after expiration of the Initial "teaser rate" Term.

33.     Notably, Direct Energy charges these exorbitant premiums without adding any value to the consumer whatsoever.  As detailed above, Direct Energy does not either produce or transport electricity.  It has no role in running or maintaining power plants or power lines; it does no hook-ups or emergency response.  Indeed, Direct Energy does not even handle customer billing: that, too, is handled by the Distribution Company.  Essentially, all that Direct Energy does is act as a trader in the transaction.  Yet it charges several multiples of the amount the Generation Companies receive for making electricity and the Distribution Companies receive for transmitting power, maintaining power lines, and handling emergency services and customer billing and calls.[1]

---

[1] For example, CL&P currently charges 6.4 cents per kilowatt hour plus a flat charge of $16 for distribution services, while Direct Energy's price for its services as of last month was 15.3 cents per kilowatt hour.  According to the U.S. Energy Information Administration, the average household in Connecticut uses 731 kilowatt hours per month. http://www.eia.gov/tools/faqs/faq.cfm?id=97&t=3   Such an average household would pay CL&P about $63 for distribution services, while paying Direct Energy $112 – almost twice as much.

**C.** **Plaintiff Gary Richards Suffered Injury Due To Direct Energy's Improper Business Practices**

34.     Plaintiff Gary Richards was on Direct Energy's Variable rate plan from April to August, 2013. When Direct Energy used its discretion to move Plaintiff from a fixed to a variable rate plan, his rate jumped from $.0755 to $.1064, a 41% increase.

35.     During this time period, wholesale rates ranged between 3 and 5 cents per kwh for every week except one,[2] and Plaintiff was charged more than double the wholesale rate every week but one.

36.     Plaintiff reasonably relied on Direct Energy's false statements that Direct Energy's Variable rate was based on the underlying wholesale market rate.

37.     Plaintiff paid Direct Energy's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Direct Energy's conduct as set forth above.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure behalf of himself and the following class of similarly situated persons:

> All persons enrolled in a Direct Energy Services, LLC's variable rate electric plan in connection with a property located within Connecticut and Massachusetts at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Class").

39.     Plaintiff reserves the right to modify or amend the definition of the proposed Class or to propose sub-classes as might be necessary or appropriate.

---

[2] The wholesale rates for each week during this period in cents per kwh were 4.3, 4.257, 4.07, 3.873, 3.867, 4.619, 3.371, 3.381, 3.643, 4.345, 4.999, 4.516, 8.36 and 3.97.

40.     Excluded from the Class are Defendant, including any parent, subsidiary, affiliate or person controlled by Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.

41.     The proposed Class meets all requirements for class certification.  The Class satisfies the numerosity standard.  The Class is believed to number in the tens of thousands of persons.  As a result, joinder of all class members in a single action is impracticable.  On information and belief, class members can be identified by Direct Energy and Distribution Company records.

42.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Direct Energy's actions include, without limitation, whether Direct Energy:

      a.  Committed unfair or deceptive trade practices by its Variable electric rate policies and practices;

      b.  breached its covenant of good faith and fair dealing with regard to its Variable electric rate contracts;

      c.  was unjustly enriched through its Variable electric rate policies and practices; and

      d.  continues to commit wrongdoing through its Variable electric rate policies and practices.

43.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity to other available methods for the fair and efficient adjudication of this controversy.

44.     Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the class he seeks to

represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his undersigned counsel, who have extensive experience prosecuting complex class action litigation.

45.     Plaintiff's claims are typical of the claims of the Class because they arise out of the same conduct, policies, and practices of Direct Energy with respect to its Variable electric rate policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other putative class member.

46.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each class member who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

47.     Notice can be provided to Class members by using techniques and forms of notice similar to those customarily used in other class actions.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF STATE UNFAIR TRADE PRACTICES ACTS,**

48.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

49.     Plaintiff brings this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Class.

50.     Direct Energy is engaged in "trade" and "commerce" as it offers electricity for sale to consumers.

51.     Direct Energy's conduct as alleged above constitutes unfair practices:

a.  Direct Energy's contracts do not accurately describe the rates the customer will be paying or the circumstances under which the rates may change.

b.  Direct Energy's acts and practices with regard to its exorbitant Variable electric rates as alleged above are immoral, unethical, oppressive and unscrupulous.

c.  Direct Energy's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for electricity but for Direct Energy's immoral, unethical, oppressive and unscrupulous practices and procedures.  Consumers have thus overpaid for their electricity and such injury is not outweighed by any countervailing benefits to consumers or competition.  No benefit to consumers or competition results from Direct Energy's conduct, nor could consumers reasonably have avoided the injury.

52.     Direct Energy's conduct as alleged above also constitutes a deceptive act or practice. Direct Energy's Variable electric rate representations as set forth above were and are likely to mislead consumers and Direct Energy intended that consumers rely upon those representations.  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Direct Energy's Variable rates track the underlying wholesale power rates (when in fact they do not).  Direct Energy's representations were material to a reasonable

consumer and likely to affect consumer decisions and conduct, including purchases of power from Direct Energy pursuant to Variable rate contracts.

53.     The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Class to suffer an ascertainable loss and substantial injury when they paid an exorbitant premium for electricity over wholesale market rates.

54.     The foregoing actions constitute unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq,* and the Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1.

55.     Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT II

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

56.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

57.     All contracts contain an implied covenant of good faith and fair dealing, including Plaintiff's and Class members' contracts with Direct Energy.

58.     Direct Energy's Terms and Conditions give Direct Energy discretion concerning the monthly rates charged under Variable rate contracts and any increases or decreases to the rate to reflect the changes in the wholesale power market.

59.     As alleged herein, Direct Energy has used its discretion to bill exorbitant rates that are not tied to the wholesale market and to *increase* the monthly Variable rate when wholesale

markets rise, but not to commensurately *decrease* the monthly Variable rate when wholesale markets fall. As a result, consumers are billed exorbitant electric rates several multiples of the wholesale market rate.

60. Direct Energy's performance of its discretionary functions under the Terms and Conditions as alleged herein to maximize its revenue from Variable electric rates impedes the right of Plaintiff and other Class Members to receive benefits that they reasonably expected to receive under the contract.

61. On information and belief, Direct Energy's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Direct Energy's revenue at the expense of its customers and in contravention of their reasonable expectations as customers of Direct Energy.

62. Direct Energy has breached the covenant of good faith and fair dealing in the Terms and Conditions through its Variable electric rate policies and practices as alleged herein.

63. Plaintiff and members of the putative Class have sustained damages as a result of Direct Energy's breaches as alleged herein.

## COUNT III

## UNJUST ENRICHMENT

64. Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

65. Direct Energy has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein to the detriment of Plaintiff and the Class.

66.     Direct Energy has been enriched by a benefit in the form of payment of exorbitant Variable electric rates.

67.     Direct Energy's enrichment was at the expense of Plaintiff and the Class.

68.     It would be unjust to allow Direct Energy to retain the benefit.

69.     Plaintiff and the Class are entitled to disgorgement and restitution of all wrongfully-obtained gains received by Direct Energy as a result of its wrongful conduct alleged herein.

70.     Plaintiff and members of the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the putative Class, requests that this Court enter judgment against Defendant and in favor of Plaintiff and award the following relief:

(a)      Certification of the proposed Class;

(b)      Injunctive relief enjoining Direct Energy from charging exorbitant Variable electric rates under their current policies and from engaging in the wrongful, deceptive, unfair, and unconscionable practices alleged herein;

(c)      Damages in an amount to be determined at trial, including actual and punitive damages;

(d)      Disgorgement and restitution of all exorbitant rates paid to Direct Energy by Plaintiff and the putative Class as a result of the wrongs alleged herein;

(f)      Pre- and post- judgment interest at the maximum rate permitted by applicable law;

(g)      Attorneys' fees, costs, and expenses as available under the law.

(h)      Such other and additional relief as the Court may find just and equitable.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: November 19, 2014

PLAINTIFF

By: Robert A. Izard (ct01601)
    Seth R. Klein (ct18121)
    Nicole A. Veno (ct29373)
    IZARD NOBEL LLP
    29 South Main Street, Suite 305
    West Hartford, CT  06107
    (860) 493-6292