UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GARY W. RICHARDS,
   Plaintiff,

   v.          CASE NO. 3:14-cv-1724 (VAB)

DIRECT ENERGY SERVICES, LLC,
   Defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff, Mr. Gary W. Richards, filed this Complaint against Direct Energy Services, LLC ("DES"), asserting claims that arise out of DES's business of supplying electricity to residential customers.  Compl. ¶¶ 2-3, ECF No. 1.  Mr. Richards alleges that DES attracted new customers by promising low rates on electricity and subsequently charged exorbitant prices, not reasonably related to the market rate.  *Id.* ¶¶2-6.  He claims that, in doing so, DES engaged in unfair and deceptive trade practices, in violation of the state unfair trade practices laws of Connecticut, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.,* and Massachusetts, the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen. Laws Ann. ch. 93A, §1, *et seq*.  Compl. ¶ 54, ECF No. 1.  He also makes claims of unjust enrichment and breach of the covenant of good faith and fair dealing.  *Id.* ¶¶ 57-63, 65-70.

DES seeks to dismiss the entire case with prejudice under Federal Rule of Civil Procedure 12(b)(6).  Mot. To Dismiss, ECF Nos. 19-20.  For the reasons that follow, the Court **DENIES** the motion with respect to the CUTPA and breach of the covenant of good faith and fair dealing claims.  The Court **GRANTS** the motion

without prejudice with respect to the claim under the Massachusetts Regulation of Business Practices for Consumers Protection Act and the unjust enrichment claim.

## I.    FACTUAL ALLEGATIONS

Mr. Richards alleges that, in the late 1990s and early 2000s, "many states" deregulated their electricity supply markets.  Compl. ¶ 13, ECF No. 1.  Before deregulation, large, regulated public utilities allegedly administered both electricity generation and distribution.  *Id.*  According to the Complaint, after deregulation the public entities continued to distribute power through transmission lines, but the business of power generation and supply was opened to competition.  *Id.* ¶¶ 13-15. Mr. Richards claims that the electricity market now consists of three groups of companies: (1) those that generate or create electricity; (2) those that distribute it via transmission lines, and (3) those that supply it or sell it to retail customers.  *Id.* ¶ 15.

In this deregulated market, Mr. Richards alleges that several companies, like DES, operate as "middlemen," purchasing power from generation companies and selling that electricity to end users at a "mark-up" on either fixed or variable rate terms.  *Id.* ¶¶17-21.  He claims that DES, as one of these "middlemen," buys electricity from the New England regional electricity market "Power Pool System" and resells it to consumers.  *Id.* ¶¶17-18.  The prices that DES charges its customers are allegedly not approved by state regulatory authorities in Connecticut or Massachusetts.  *Id.* ¶19.  These "middlemen" companies also allegedly do not actually distribute the electricity they sell, which remains the role of the large public utilities, nor do they generate electricity, provide customer bills, or otherwise

maintain infrastructure for the electricity business. *Id.* ¶¶19, 33. Because of their limited role, Mr. Richards claims that these so-called "middlemen" companies charge "exorbitant premiums without adding any value to the consumer whatsoever." *Id.* ¶33.

Mr. Richards alleges that DES lured customers with a "teaser" rate, which was charged for a "set number of months."[1] *Id.* ¶ 3, 22. When the "teaser" rate expired, customers were automatically "rolled" into a variable-rate plan. *Id.* Mr. Richards claims that DES markets its variable-rate plan to consumers as being "based upon the wholesale market rate." *Id.* ¶ 23. In support of this claim, he quotes DES's Terms and Conditions which state that "the rate for electricity will be variable each month at Direct Energy's discretion. The rate may be higher or lower each month based on business and market conditions." *Id.* ¶25. He also alleges that DES's answers to "Frequently Asked Questions" indicate that "[t]he variable rate may be higher or lower each month as determined by Direct Energy based on business or market conditions." *Id.* ¶24.

In Mr. Richards's view, "a reasonable consumer" would interpret DES's Terms of Service to mean that the plan's rates would rise and fall with the wholesale market rates. *Id.* ¶ 26. He claims that DES's variable-rate plan, in reality, did the opposite, resulting in artificially high electricity prices that did not decrease when wholesale prices fell. *Id.* ¶¶27-28. He includes a chart in his Complaint that shows that the DES rate increased when the "average wholesale" rate decreased and that

---

[1] At oral argument on the Motion to Dismiss, counsel for DES explained that this so-called "teaser" rate was in place for a year, distinguishing DES's business from other "middleman" electricity providers whose initial "teaser" rate was in place for a matter of months.

DES charged a substantial margin above the average wholesale rate from November 2013 to October 2014. *Id.* ¶ 28.

Mr. Richards alleges that he is a Connecticut resident, and that he was enrolled in DES's variable-rate plan from April to August 2013. *Id.* ¶¶ 8, 34. He claims that when the teaser rate expired and he was rolled into the variable-rate plan, his electricity prices rose immediately by 41% and that he was charged "more than double the wholesale rate every week but one" that he was enrolled in the plan. *Id.* ¶¶ 34-35.

In filing this lawsuit, Mr. Richards has indicated that he will seek to certify a class that consists of "[a]ll persons enrolled in a [DES] variable rate electric plan in connection with a property located within Connecticut and Massachusetts." *Id.* ¶ 38.

## II.     STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, to state a plausible claim, a plaintiff's complaint must have "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555, 557.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[A] claim should only be dismissed at the pleading stage where the allegations are so general, and the alternative explanations so compelling, that the claim no longer appears plausible." *Arar v. Ashcroft,* 585 F.3d 559, 617 (2d Cir. 2009) (citing Fed. R. Civ. P. 8(a); *Twombly,* 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007); *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir. 1996) (citations omitted). In considering a motion to dismiss, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz,* 102 F.3d at 662 (citation and internal quotation marks omitted).

## III.   DISCUSSION

Mr. Richards alleges claims under the unfair trade practices statutes of Connecticut and Massachusetts as well as claims of breach of the covenant of good faith and fair dealing and unjust enrichment. DES's Motion to Dismiss challenges the sufficiency of all of these claims under Rule 12(b)(6) and asks that this lawsuit be dismissed in its entirety with prejudice. Mot. to Dismiss 2, ECF No. 20; Fed. R. Civ. P. 12(b)(6). The Court will address each of Mr. Richards's claims in turn.

### A. COUNT ONE (UNFAIR TRADE PRACTICES STATUTES)

DES makes two arguments as to why Mr. Richards's claims under the unfair trade practices statutes of Connecticut and Massachusetts should be dismissed. First, DES argues that Mr. Richards cannot assert claims under Massachusetts law because choice of law analysis indicates that Connecticut law governs this case. Mot. to Dismiss 9-10, ECF No. 20. Second, it argues that the Court should dismiss Mr. Richards's unfair trade practices claims because other courts addressing similar factual scenarios have done so. *Id.* at 10-13 (citing *Faistl v. Energy Plus Hldgs., LLC,* No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) and *Slack v. Suburban Propane Partners, LP,* No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010)).[2] In making this second argument, DES reasons that it cannot be liable for unfair or deceptive trade practices as a matter of law, because its contract with Mr. Richards explicitly gave DES the discretion to act in the way that Mr. Richards is alleging it did. Mot. to Dismiss, 13, 16-21, ECF No. 20.

### i. Unfair Trade Practices Claim Under Massachusetts Law

DES argues that Mr. Richards cannot assert claims under the Massachusetts unfair trade practices statute because he was only injured in Connecticut and, therefore, choice of law analysis indicates that Connecticut law applies. *Id.* at 9-10. Alternatively, DES also argues that Mr. Richards has failed to satisfy the necessary

---

[2] At oral argument and in notices of supplemental authority, DES's counsel also highlighted *Zahn v. North American Power & Gas, Inc.,* No. 1:14-cv-8370 (N.D. Ill. May 22, 2015); *Orange v. Starion Energy PA, Inc.,* No. 2:15-cv-773 (E.D. Pa. June 26, 2015); *Daniyan v. Viridian Energy LLC,* No. 1:14-cv-2715 (D. Md. June 30, 2015); and *Urbino v. Ambit Energy Holdings, LLC,* No. 3:14-cv-5184 (D.N.J. July 22, 2015). Def.'s Notice of Suppl. Authority, ECF No. 54; Def.'s Second Notice of Suppl. Authority, ECF No. 55; Def.'s Third Notice of Suppl. Authority, ECF No. 61.

legal elements of a claim under the Massachusetts unfair trade practices law.  *Id.* at 21 n.8; Reply Br. 10, ECF No. 39.  Before reaching any of these arguments, it is the Court's view that Mr. Richards does not have standing to pursue claims under Massachusetts law.  Because standing issues go to the Court's subject matter jurisdiction, they can and should be raised *sua sponte*.  *Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (citations omitted).  They must also be decided before any other legal issue.  *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-94 (1998) (holding that because Article III standing is jurisdictional, it must be decided before other legal issues).

Article III, Section 2 of the U.S. Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation omitted).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 106 (2d Cir. 2008) (citations omitted) (alteration in original).  To have standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress."  *Mahon*, 683 F.3d at 62 (citation omitted); *Warth v. Seldin,* 422 U.S. 490, 498-99 (1975) ("As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on

his behalf.") (citation omitted).  "It is well established that 'a plaintiff must demonstrate standing for each claim [ ]he seeks to press.' Thus, *with respect to each asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury to [him]self.'" *Mahon*, 683 F.3d at 64 (citations omitted) (emphasis in original).

Consistent with the Second Circuit's reasoning in *Mahon,* Mr. Richards must show that he has standing personally to assert all of the claims in the Complaint at the case's inception, regardless of if and when a class is certified.  *Warth,* 422 U.S. at 498 ("[S]tanding imports justiciability… [it] is the threshold question in every federal case, determining the power of the court to entertain the suit."); *In re Appointment of Indep. Counsel,* 766 F.2d 70, 73 (2d Cir. 1985) ("Since the standing requirement is derived from Article III limitations on the federal courts' powers, it is the threshold issue in every case."); *see also In re Aggrenox Antitrust Litig.,* No. 3:14-md-2516 (SRU), --- F. Supp.3d ---, 2015 WL 1311352, at *18-19 (D. Conn. Mar. 23, 2015) (finding that *Mahon* reaffirmed the need to analyze standing for each claim in a case before class certification, unless the issue of class certification was dispositive, because "'[a] federal rule cannot alter a constitutional requirement'") (alteration in original) (quoting *Mahon*, 683 F.3d at 64).

That standing analysis must proceed on a claim-by-claim basis.  *See Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (internal quotation marks and citation omitted); *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross… 'nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the

necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'") (citation omitted); *see also King Cnty., Wash. v. IKB Deutsche Industriebank AG,* Nos. 09 Civ 8387(SAS), 09 Civ. 8822(SAS), 2010 WL 2010943, at *1 (S.D.N.Y. May 18, 2010) ("A putative class representative lacks standing to bring a claim if [he] did not suffer the injury that gives rise to that claim, [and] [w]here multiple claims are brought, at 'least one *named* plaintiff must have standing to pursue each claim alleged.'") (citations omitted) (emphasis in original).  Thus, the fact that Mr. Richards has suffered injury in Connecticut due to DES's actions and, therefore, has standing under Connecticut law, is not dispositive of whether he has standing under the Massachusetts statute.

Mr. Richards only alleges that he has purchased electricity from DES in Connecticut.  Compl. ¶¶8, 34-37, ECF No. 1.  Thus, the Court must decide whether this allegation gives him standing to state a claim under the Massachusetts unfair trade practices statutes.  The Court concludes that it does not.  Although Mr. Richards does allege that DES operated its variable-rate plan in Massachusetts, he has not alleged that he personally subscribed to the plan there.  Absent this allegation, he has failed to plead that DES's conduct in Massachusetts impacted him "in a personal and individual way," which is required for the "particularized" or personal injury-in-fact aspect of standing.  *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 & n.1 (1992) (defining the injury in fact aspect of standing to require a particularized injury, which is one that "affects the plaintiff in a personal and individual way.") (citations omitted); *Mahon*, 683 F.3d at 64 ("*with respect to each*

*asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury to [him]self.'") (emphasis in original) (citation omitted).

Without an allegation that he personally was injured in Massachusetts, Mr. Richards's claim is essentially that un-named DES customers in Massachusetts suffered harm from its variable-rate plan. "Such a grievance, 'suffer[ed] in some indefinite way in common with people generally,' cannot demonstrate an injury-in-fact." *Karim v. AWB, Ltd.,* 347 F. App'x 714, 715 (2d Cir. 2009) (affirming dismissal of a claim for lack of standing because plaintiff failed to allege particularized injury-in-fact and, instead, alleged injury to the population of an entire country) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 344 (2006)).

Accordingly, Mr. Richards has failed to plead he suffered an injury in fact in Massachusetts and has no standing to bring a claim under the unfair trade practices statute of that state. *See In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.,* 1 F. Supp.3d 34, 50 (E.D.N.Y. 2014) (finding that a plaintiff lacks standing to bring claims on behalf of a class "under the laws of states where the named plaintiffs have never lived or resided") (citations omitted), *reconsidered on other grounds,* 14 F. Supp.3d 99 (E.D.N.Y. 2014); *Simington v. Lease Fin. Grp., LLC,* No. 10 Civ. 6052 (KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (noting in the context of a proposed class action that "[p]laintiffs do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud statutes.") (citations omitted).

Mr. Richards's plan to seek class certification at some point during this lawsuit does not relieve him of the burden of pleading facts that show he has standing personally with respect to all claims in his Complaint at this time. *See Lewis,* 518 U.S. at 357 ("That a suit may be a class action... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (citation and internal quotation marks omitted) (alteration in original); *see also Plumbers Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Hldgs. Ltd.,* 886 F. Supp.2d 328, 339-340 (S.D.N.Y. 2012) (dismissing a claim because a plaintiff did not have standing personally to assert it, even though he had standing to assert other claims alleged in the complaint and planned to represent a class, the members of which would have standing on this particular claim) (citing *W.R. Huff Asset Mgmt. Co.,* 549 F.3d at 106). Because Mr. Richards fails to meet that burden at this time, the claim under Massachusetts law must be dismissed. The Court, therefore, dismisses the unfair trade practices claim based on the Massachusetts statute without prejudice to renewal by a plaintiff with proper standing.[3]

---

[3] The Court notes, however, that it will not likely be appropriate to apply only Connecticut law to the class, if this claim is re-filed with a plaintiff with proper standing and a class is certified . *See Phillips Petroleum, Co. v. Shutts,* 472 U.S. 797, 814-15, 821-22 (1985) (finding that it was inappropriate to apply only Kansas law to all members of a class, where 97% of them had no connection to Kansas whatsoever and noting that "Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair.") (citation omitted).

### ii. CUTPA

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. §42-110b(a). To state a claim under CUTPA, Mr. Richards must plead that he (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce. *See id;* Conn. Gen. Stat. §42-110g(a). Mr. Richards alleges that DES's conduct is both unfair and deceptive. Compl. ¶¶51-52, ECF No. 1.

First, as a preliminary matter, DES argues that Mr. Richards has failed to plead a CUTPA claim because he has not alleged a breach of contract or, in other words, because DES's behavior was explicitly permitted by the contract. Mot. To Dismiss 16, 18, ECF No. 20. In making this argument, DES cites cases standing for the proposition that, if a breach of contract forms the basis for a CUTPA claim, a plaintiff must plead some "aggravating circumstances attending the breach." *See e.g., Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc.*, 41 Conn. Sup. 575, 580 (Conn. Super. Ct. 1991) (citations omitted). However, it is not necessary to plead a breach of contract to sustain a CUTPA action. *Complete Energy, Inc. v. Fox,* No. TTDCV116004252S, 2013 WL 812483, at *3 (Conn. Super. Ct. Jan. 25, 2013) ("'[a] CUTPA claim need not be predicated upon a breach of contract.'") (citation omitted and alteration in original); *see also Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 724-27 (1993) (explaining that the legislative history of a 1979 CUTPA amendment indicates that it was "intended to make privity less of an obstacle to

recovery" and that privity is no longer a pre-requisite to a CUTPA claim),
*disapproved of on other grounds by Macomber v. Travelers Prop. & Cas. Corp.,* 277
Conn. 617, 643 (2006); *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, No.
X08CV030196141S, 2009 WL 2454993, at *3 (Conn. Super. Ct. July 10, 2009)
(citations omitted) ("In 1979, the legislature eliminated the privity requirement of
CUTPA").

      While in some cases, such as *Edmunds v. Cuno, Inc.* (upon which DES relies in
its brief, Mot. to Dismiss 17-18, ECF No. 20), the lack of a breach of contract may be
probative of whether the defendant's practice was unfair, there is no requirement
that a contract be breached to sustain a CUTPA claim.  277 Conn. 425, 450-51
(2006) (noting that the plaintiff "must prove wrongful conduct" and that the fact
that an employment termination that "conformed in all respects to the express
terms of the parties' agreements" could not state a CUTPA claim without allegations
of some additional wrongful conduct) (citations omitted).  "The purpose of CUTPA is
to protect the public from unfair practices in the conduct of any trade or commerce."
*Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 42
(1998) (citation omitted); *see also* Conn. Gen. Stat. §42-110b(d) ("It is the intention
of the legislature that this chapter [CUTPA] be remedial and be so construed.").  This
purpose extends to commercial relations generally, outside of the scope of
contracting.  *See Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 492 (1995)
("CUTPA [ ] applies to a broad spectrum of commercial activity… [t]he entire act is
remedial… and must be liberally construed in favor of those whom the legislature
intended to benefit.") (citations and internal quotation marks omitted).

Second, DES argues that Mr. Richards has failed to plead an unfair or deceptive business practice, because his allegations do not meet the elements of the cigarette rule.  Mot. To Dismiss 18-21, ECF No. 20.  In particular, DES argues that nothing about its contract is unfair or deceptive and that it acted in accordance with the contract's provisions.  *Id.* at 18-19.  In support of this point, it notes that its Terms of Service do not use the term "wholesale market rate" at all, but rather make explicit that DES has the sole discretion to set rates under its variable-rate plan.  It argues that this omission is a crucial and dispositive distinction from other similar cases brought against other "middlemen" energy suppliers.  *See* Def.'s Third Suppl. Notice of Auth., Ex. B, ECF No. 61-2 (charting this language difference between DES's contract and other contracts at issue in other lawsuits against other "middleman" energy providers).  DES also notes that the Connecticut Public Utilities Regulatory Authority ("PURA") reviewed and approved its contract language and that PURA periodically reviews its rates.  Mot. To Dismiss 1-2, 6-8, ECF No. 20; Reply Br. 8 & n.5, ECF No. 39.  Finally, DES also argues that Mr. Richards's allegations indicate that its prices did move roughly in tandem with the wholesale market prices, which distinguishes this case from several other lawsuits brought in a similar factual context, where the pricing of the electricity providers varied much more widely from the wholesale market rate.

To determine whether conduct is unfair under CUTPA, Connecticut courts apply the cigarette rule and look to "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, is it within

at least the penumbra of some common law, statutory or other established concept

of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3)

whether it causes substantial injury to consumers, [competitors or other

businesspersons]." *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 227-28

(2010) (citation and internal quotation marks omitted) (alterations in original).  A

practice need not meet all three criteria to constitute an unfair practice under

CUTPA, and "[a] practice may be unfair because of the degree to which it meets one

of the criteria or because to a lesser extent it meets all three."  *Id.* (citation and

internal quotation marks omitted).

      For an act or practice to be deceptive[4] (1) "there must be a representation,

omission or other practice likely to mislead consumers," (2) "consumers must

interpret the message reasonably under the circumstances," and (3) "the misleading

representation, omission or practice must be material – that is, likely to affect

consumer decisions or conduct."  *Bank of New York v. Nat'l Funding*, No.

X01CV000171525S, 2005 WL 527749, at *5 (Conn. Super. Ct. Jan. 21, 2005) (citing

*Southington Savings Bank v. Rodgers*, 40 Conn. App. 23, 28 (Conn. App. Ct. 1995));

*see also Caldor, Inc. v. Heslin,* 215 Conn. 590, 597 (1990) (citation omitted).

Deception under CUTPA includes a broader range of conduct than common-law

claims for fraud or misrepresentation and does not require proof of intent.  *Wilkins*

*v. Yale Univ.,* No. CV106014646S, 2011 WL 1087144, at *4 (Conn. Super. Ct. Feb. 25,

---

[4] Because deception is a subcategory of unfairness, if Mr. Richards has successfully alleged
an unfair practice, he also has also successfully alleged a deceptive one.  *See Wilkins v. Yale
Univ.,* No. CV106014646S, 2011 WL 1087144, at *4 (Conn. Super. Ct. Feb. 25, 2011) ("A
subset of unfair practices, recognized by our Supreme Court, is deceptive practices") (citing
*Daddona v. Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 254 (1988)).

2011) (citing *Muniz v. Kravis,* 59 Conn. App. 704, 713 (Conn. App. Ct. 2000)).  Mr.
Richards also "need not prove [and therefore need not plead] reliance or that the
representation became part of the basis of the bargain."  *Hinchliffe v. Am. Motors
Corp.*, 184 Conn. 607, 617 (1981).

Whether DES's variable-rate plan was an unfair or deceptive market practice
is "a question of fact that is not readily susceptible to resolution on a motion to
dismiss."  *Langan v. Johnson & Johnson Consumer Cos., Inc.,* No. 3:13-cv-01470 (JAM),
--- F. Supp.3d ---, 2015 WL 1476400, at *3 (D. Conn. Mar. 31, 2015) (denying a
motion to dismiss a CUTPA claim because the Court could not determine as a matter
of law that the defendant's labels were not deceptive); *Naples*, 295 Conn. at 228 ("It
is well settled that whether a defendant's acts constitute... deceptive or unfair trade
practices under CUTPA... is a question of fact.") (internal quotation marks and
citation omitted) (alterations in original).  Thus, the Court need not and should not
determine as a matter of law whether DES's conduct, as alleged, actually violated
CUTPA.  Instead, the proper inquiry is whether Mr. Richards has alleged sufficient
facts to "raise a reasonable expectation that discovery will reveal evidence"
supporting the claim. *Twombly*, 550 U.S. at 556.  While the question is a close one,
the Court finds that Mr. Richards has pled sufficient facts showing that he is entitled
to discovery and must deny DES's Motion to Dismiss the CUTPA claim.

Mr. Richards has claimed that one possible and reasonable understanding of
DES's contract, and in particular the term "business and market conditions," was
that DES's energy prices would reflect the wholesale market rates to some unknown
extent.  Compl. ¶¶4, 23, 25-26, 31, ECF No. 1.  The Complaint also states that the

rates DES charged were significantly higher than the wholesale market rates and did not always increase or decrease when the wholesale market rates did. *Id.* ¶¶28-31. These allegations are sufficient at the motion to dismiss stage to show that Mr. Richards is entitled to more discovery on whether DES was engaged in an unfair or deceptive business practice, because these are the kinds of behaviors that may fall under CUTPA. *Cf. A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 216 n.9 (1990) (observing that the Federal Trade Commission has identified as three of the four primary, but not exclusive, unfair practices as "withholding material information, [ ] making unsubstantiated advertising claims, [and] using high-pressure sales techniques.") (quoting *Am. Fin. Servs. v. F.T.C.*, 767 F.2d 957, 979 (D.C. Cir. 1985)); *see Sanborn v. Viridian Energy, Inc.,* No. 3:14-cv-1731 (SRU), Mot. to Dismiss Hr'g Tr. 37:16-25 (D. Conn. Apr. 1, 2015), *available at* Pl.'s Notice of Suppl. Authority, Ex. A, ECF No. 44-1 (finding that plaintiff stated a CUTPA claim on very similar facts to this case regarding a "middleman" provider of energy whose contract stated "[y]our rate may fluctuate month to month based on wholesale market conditions"). At this stage, the Court simply does not have enough facts before it to know how prices were set by DES. Their actions may not have been unfair, but that conclusion cannot be reached before the close of discovery.

DES argues that, because PURA approved its contract, it cannot be liable under CUTPA as a matter of law. The Court disagrees. The fact that PURA "impliedly blessed" this contractual language does not show that Mr. Richards has failed to allege plausibly that DES's actions may have been unfair in practice. Mot. To Dismiss 19, ECF No. 20. DES also argues that PURA periodically reviews DES's

rates.  Reply Br. 8 & n.5, ECF No. 39.  While this fact is likely relevant to the question

of whether DES's prices were actually fair, which will arise at trial or in a motion for

summary judgment, it cannot and does not dispose of Mr. Richards's claims as a

matter of law.  *See Newman & Schwartz,* 102 F.3d at 662 (noting that in considering

a motion to dismiss, a "district court must limit itself to facts stated in the

complaint")(citation and internal quotation marks omitted); *see also Arar,* 585 F.3d

at 617 (a claim cannot be dismissed until it no longer appears plausible) (citations

omitted).

    While the text of the contract itself does not indicate that DES prices would

definitively or precisely be linked with the wholesale market price, it is plausible

that a reasonable consumer would infer a link between the two.  DES argues that,

unlike its competitors who have had lawsuits filed against them, the term

"wholesale market" does not appear in the Terms of Service and, any exclusive link a

consumer made between DES pricing and the wholesale market was unreasonable.

Reply Br. 7, ECF No. 39; *see also* Def.'s Third Notice of Suppl. Authority, Ex. B, ECF

No. 61-2.  Thus, DES reasons its contract was perfectly clear that consumers were

signing up for prices determined exclusively at DES's discretion.  But there would be

no conceivable reason for a consumer to sign up for DES's energy plan if he did not

believe he would receive a better overall deal on his electricity rates, based on its

competitive advantage in obtaining prices in the energy marketplace.  *See* Compl.

¶23, ECF No. 1 (noting that the "entire hook by which Direct Energy attracts

consumers" is pricing).  When taking all of Mr. Richards's allegations as true, the fact

that DES's contract does not contain the term "wholesale market price" is not

enough to make Mr. Richards's claim entirely implausible. *See Langan,* 2015 WL

1476400, at *3 (rejecting defendant's arguments that the representations made on a

sunscreen label were literally true and, therefore, not deceptive under CUTPA as a

matter of law because they rested on only one of many possible interpretations of

the language at issue) (citation omitted).[5]  At this stage, the Court finds that it was

not unreasonable for a consumer to interpret "business and market conditions" as

factors related, at least in part, to wholesale market pricing. *See Cantonbury Heights*

*Condominium Ass'n, Inc. v. Local Land Dev., LLC,* 273 Conn. 724, 742 (2005)

("[W]here the [contractual] language is ambiguous we must construe those

ambiguities against the drafter.") (citation omitted).  DES cannot rely on the fact that

this term lacks a clear, readily understood, and singular meaning to dismiss the

claim against it.  In fact, it is the vagueness of this term, when coupled with Mr.

Richards's other allegations, that indicates discovery is warranted to determine how

precisely DES was setting prices and whether it was doing so unfairly.

Accordingly, because a consumer could plausibly infer some relationship

between wholesale market prices and "business and market conditions" and DES's

---

[5] DES cites New Jersey cases to support an assumption of risk argument.  DES argues that by signing DES's contract, consumers assumed the risk of having DES set prices at any level, and that, therefore, DES is shielded them from liability under CUTPA.  Mot. to Dismiss 10-13, ECF No. 20 (citing *Faistl v. Energy Plus Hldgs., LLC,* No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) and *Slack v. Suburban Propane Partners, LP,* No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010)); Def.'s Third Notice of Suppl. Authority, ECF No. 61 (citing and attaching as Ex. A, *Urbino v. Ambit Energy Hldgs., LLC,* No. 3:14-cv-5184 (D.N.J. July 22, 2015)).  This Court, however, must follow Connecticut law.  The Complaint plausibly alleges that DES exploited the contract's terms unfairly and that its business practices are deceptive and unfair in violation of CUTPA.  Because the Court must construe CUTPA liberally to ensure its remedial purpose is realized, it cannot dismiss the claim as a matter of law based on this "assumption of risk" argument at this stage of the case.  *See Larsen Chelsey Realty Co.,* 232 Conn. at 492 ("CUTPA… and must be liberally construed in favor of those whom the legislature intended to benefit.") (citations and internal quotation marks omitted).

prices were very different from average wholesale market prices, Mr. Richards has

raised an inference that DES's business practices could have been deceptive and,

therefore, could have run counter to "some established concept of unfairness."

Accordingly, he has satisfied the first prong of the cigarette rule at this stage.  *See*

*e.g., James F. Canning Agcy. v. Nationwide Ins. Co. of Am.*, No. 3:09-cv-1413 (MRK),

2010 WL 2698292, at *4 (D. Conn. Mar. 10, 2010) (finding that negligent

misrepresentations run contrary to public policy and therefore satisfy the first

prong of the cigarette rule) (citation omitted); *Urich v. Fish,* No. 360659, 2000 WL

1835382, at * 2 (Conn. Super. Ct. Nov. 27, 2000) (observing that "a classic 'switch'

technique, whereby a consumer is promised (and pays for) one thing, and is given

quite another" constitutes an example of an unfair act under CUTPA) (citations

omitted); *D'Amico v. LA Fitness,* No. FSTCV126013564S, 2013 WL 6912912, at * 5

(Conn. Super. Ct. Dec. 2, 2013) (finding that a claim by a fitness provider that they

had "expertise and experience" in operating a safe fitness club when they hired

inexperienced employees was a deceptive act under the three-prong *Caldor* test and,

therefore, violated public policy and satisfied the first prong of the cigarette rule).[6]

Mr. Richards also has satisfied the second prong of the cigarette rule at this

stage.  Depending on the context, telling customers one thing and doing another

could well be unethical, immoral or unscrupulous business behavior.  *See Pusztay v.*

---

[6] DES argues that it had no duty to disclose how it would determine its pricing, and in fact, that risk of not knowing is exactly the benefit of Mr. Richards's bargain.  Mot. To Dismiss 20-21, ECF No. 20 (citing *Glazer v. Dress Barn, Inc.,* 274 Conn. 33, 83-84 (2005).  However, by using the term "business and market conditions," DES already disclosed how it would determine its pricing.  The issue to be determined at another stage of this litigation is whether this pricing scheme is unfair as a matter of law under CUTPA, something that cannot be determined now without factual development.

*Allstate Ins. Co.,* No. FSTCV065002425S, 2009 WL 2357958, at *10 (Conn. Super. Ct. June 30, 2009) ("[A]llegations that the defendant [ ] intentionally made misrepresentations… satisfy the second prong of the cigarette rule, in that they are arguably indicative of 'immoral, unethical, oppressive, or unscrupulous' behaviors.") (citations omitted); *D'Amico,* 2013 WL 612912, at *6 ("The weight of authority in Connecticut holds that misrepresentations in the formation of a contract can be sufficiently aggravating circumstances to satisfy the requirement that such actions or omissions are immoral, unethical, oppressive or unscrupulous.") (citations omitted).  While there may be reasons (to be uncovered later during discovery) that DES's behavior was not immoral, unethical, oppressive or unscrupulous, the Court cannot find as a matter of law that it is not at this stage.

Relying on the graph available at paragraph 29 of the Complaint, DES argues that its prices did not vary as widely as those of its competitor middlemen from the wholesale market prices.  It notes in particular that the graph in this case looks quite different than those submitted by plaintiffs in the other similar matters where motions to dismiss had been denied, including *Sanborn v. Viridian Energy, Inc.,* No. 3:14-cv-1731 (SRU) (D. Conn. Apr. 1. 2015), *available at* Pl.'s Notice of Suppl. Authority, Ex. A, ECF No. 44-1, *Gruber v. Starion Energy, Inc.,* No. 3:14-cv-01828 (SRU) (D. Conn. Apr. 7, 2015), *available at* Pl.'s Notice of Suppl. Authority, Ex. A, ECF No. 46-1, and *Fritz v. North American Power & Gas, LLC,* No. 3:14-cv-634 (WWE) (D. Conn. Jan. 29, 2015), *available at* Pl.'s Notice of Suppl. Authority, Ex. B, ECF No. 44-1. At oral argument, DES analogized its case, in terms of the pricing graph, to *Zahn v. North American Power & Gas, Inc.,* No. 1:14-cv-8370 (N.D. Ill. May 22, 2015),

*available at* Def.'s Notice of Suppl. Authority, Ex. A, ECF No. 54-1, which was dismissed because the pricing of the defendant moved roughly in tandem with the wholesale market price. This argument may present a valid defense that could support a motion for summary judgment, but it is not one the Court can consider in evaluating a motion to dismiss.

Mr. Richards also has alleged successfully that DES caused him substantial injury. To plead that an action caused "substantial injury," in satisfaction of the third prong of the cigarette rule, Mr. Richards must show that the injury was substantial, that it was not outweighed by "any countervailing benefits to consumers or competition that the practice produces"; and that it is an injury the "consumers themselves could not have reasonably avoided." *A-G Foods, Inc.*, 216 Conn. at 216 (citations omitted). He alleges that he was charged more than double the wholesale rate for every week except one that he was enrolled in the variable-rate plan. Compl. ¶35, ECF No. 1. The Complaint provides that an average family would have paid $49 more in a given month under DES's pricing than if they had paid the average wholesale price, which would have amounted to $588 more in the course of a year. Compl. ¶33 n.1, ECF No. 1. This amount of monetary loss constitutes substantial injury under CUTPA, particularly if it occurred on a mass scale, as the Complaint alleges. *See e.g., Chesire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 113-14 (1992) (finding that a charge of $490 did amount to "substantial injury" and noting that CUTPA must be construed consistent with its broad scope and remedial purpose) (citation omitted); *see also Larsen Chelsey Realty Co.,* 232 Conn. at 492 ("CUTPA... and must be liberally construed in favor of those whom the legislature

intended to benefit.") (citations and internal quotation marks omitted).  Although the Complaint could admittedly be more specific about the amount of the loss Mr. Richards suffered, the Court finds that he has plausibly alleged substantial injury.[7]

DES does not directly suggest that these losses were outweighed by a countervailing benefit to the consumer.  DES's argument that Mr. Richards received only what the contract provided implicitly suggests that he could have avoided injury.  However, since it was reasonable for a consumer to infer from reading the contract that DES's price would be correlated to some extent with the wholesale market price, and Mr. Richards has alleged that DES's prices did not do so, Mr. Richards could not have avoided injury, and he has successfully pled substantial injury.

Accordingly, for all of the foregoing reasons, Mr. Richards has plausibly alleged a CUTPA claim.

### B.  COUNT TWO (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

DES argues that Mr. Richards has failed to state a claim of breach of the covenant of good faith and fair dealing because he has not alleged a breach of contract and, therefore, has not pled bad faith.  Mot. to Dismiss Br. 15-16, ECF No. 20.  DES reasons that Mr. Richards is inappropriately seeking to use the covenant of good faith and fair dealing to "rewrite his contract and impose a ceiling on rates where none was bargained for."  Mot. to Dismiss Br. 13-14, ECF No. 20; Reply Br. 3-

---

[7] The Court takes note of DES's argument that Mr. Richards was only enrolled in the variable-rate plan for a short period of time and did not experience many of the prices shown in chart and graph at paragraphs 28 and 29 of the Complaint.  At this stage, however, this fact does not provide grounds to dismiss the case because it does now show as a matter of law that Mr. Richards has failed to state a claim.

4, ECF No. 39 (noting that without the inclusion of the term "wholesale market rate," Mr. Richards has failed to plead bad faith).  In the alternative, DES argues that Mr. Richards has not pled bad faith because what was delivered was not significantly different from what was promised.  The Court disagrees.

The vast majority of contracts include an implied covenant of good faith and fair dealing, which operates as a rule of interpretation to ensure that rights under the contract are not unfairly impeded.  *Magnan v. Anaconda Indus., Inc.,* 193 Conn. 558, 566 (1984) (noting that the Restatement (Second) of Contracts recognizes this covenant in every contract "without limitation") (citing Restatement (Second) of Contracts § 205 (1979)); *Gupta v. New Britain General Hosp.,* 239 Conn. 574, 598 (1996) ("Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.") (citation and internal quotation marks omitted); *De La Concha of Harford, Inc. v. Aetna Life Ins. Co.,* 269 Conn. 424, 433 (2004) ("The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.") (citation and internal quotation marks omitted).  The Court finds no reason why the covenant would not apply to Mr. Richards's agreement with DES.

"'To constitute a breach of [this covenant], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.'"  *Colon v. Commonwealth Annuity and Life Ins. Co.*, No. 3:08-CV-00079 (PCD), 2008 WL

2185923, at *2 (D. Conn. May 22, 2008) (quoting *De La Concha of Hartford, Inc.*, 269

Conn. at 433); *see also Magnan,* 193 Conn. at 567 (describing the covenant as a "rule

of construction designed to fulfill the reasonable expectations of the contracting

parties as they presumably intended."); *Landry v. Spitz,* 102 Conn. App. 34, 43 (Conn.

App. Ct. 2007) ("'a party who evades the spirit of the contract… may be liable for

breach of the implied covenant of good faith and fair dealing'") (quoting Williston,

*Contracts* §63.22, p. 508 (4th ed. Lord 2002) (alteration in original)).  Bad faith

requires fraud, a "'design to mislead or deceive another,'" or "'a neglect or refusal to

fulfill some duty or some contractual obligation, not prompted by an honest mistake

as to one's duties, but by some interested or sinister motive.'"  *De la Concha of*

*Hartford, Inc.,* 269 Conn. at 433 (quoting *Habetz v. Condon*, 224 Conn. 231, 237-38

(1992)).

    As discussed above, Mr. Richards plausibly alleges that consumers

reasonably understood that DES's variable-rate plan prices would reflect the

wholesale market price in some way.  By failing to actually do this in practice, DES

possibly denied Mr. Richards what "he [ ] reasonably expected to receive under the

contract."  *Colon*, 2008 WL 2185923, at *2 (citation and internal quotation marks

omitted).  Mr. Richards also alleges that by charging a price that was more than

double the wholesale rate for every week except one that he was enrolled in the

plan, DES acted in bad faith.  Compl. ¶¶35, 61, ECF No. 1.  The Court finds that this is

a plausible allegation of bad faith.  *See Colon,* 2008 WL 2185923, at *2 (denying a

motion to dismiss because "[i]t is not clear from the complaint that there are no

circumstances fitting [the] description [of facts alleged in the complaint] that would

be so egregious and demonstrative of dishonest purpose as to show bad faith on the part of [the] Defendant[ ].”); *see also Sanborn,* Mot. to Dismiss Hr’g Tr. 39:7-12 (D. Conn. Apr. 1, 2015) (finding that “price gouging” satisfies the bad faith requirement for a claim of breach of the covenant of good faith and fair dealing).

Essentially, DES argues that, in signing its contract, Mr. Richards took a risk that DES would exercise its discretion and not set prices as he “preferred” or “predicted.” Mot. to Dismiss 21, ECF No. 20.  It argues that the covenant of good faith and fair dealing cannot be used to undo that bargain.  *Id.*  While the contract left the price open to be set at DES’s discretion, the covenant of good faith and fair dealing requires that DES exercise that discretion reasonably by charging a commercially reasonable price.  *See Economos v. Liljedahl Bros., Inc.*, 279 Conn. 300, 307 (2006) (“[M]odern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties…”); *Warner v. Konover,* 210 Conn. 150, 154-55 (1989) (observing that a party with contractually provided discretion must exercise that discretion “in a manner consistent with good faith and fair dealing.”); *Artman v. Output Techs. Solutions E. Region, Inc.*, No. CV 000595362S, 2000 WL 992166, at *2 (Conn. Super. Ct. June 30, 2000) (noting that if a contract gives a party discretion, that discretion must be exercised “fairly in order to comply with the implied covenant of good faith and fair dealing”); *see also Marcus Dairy, Inc. v. Rollin Dairy Corp.*, Civil No. 3:05cv589 (PCD), 2008 WL 4425954, at *7 (D. Conn. Sept. 24, 2008) (finding that under the UCC, good faith requires charging a commercially reasonable price in an open price contract) (citing UCC §2-305, Cmt. 3, adopted by

26

Connecticut in Conn. Gen. Stat. §42a-2-305).  In pleading that DES's prices were arbitrarily high and unreasonable and that DES kept its prices high to make its variable-rate plan a "pure profit center," Mr. Richards has alleged a claim of breach of the covenant of good faith and fair dealing.  Compl. ¶¶27-31, 33, ECF No. 1.

DES also argues that Mr. Richards cannot sustain a claim of breach of the covenant of good faith and fair dealing because he has not alleged a breach of the contract.  Mot. to Dismiss Br. 13-14, ECF No. 20.  The Court disagrees.  Mr. Richards need not allege a breach of his agreement with DES in the "technical sense," but rather a deprivation of the benefit of his bargain through other means.  *See N. Am. Tech. Servs., Inc. v. VJ Techs., Inc.,* Civil Action No. 10 CV 1384(AWT), 2011 WL 4538069, at *4 (D. Conn. Sept. 29, 2011) (citation and internal quotation marks omitted); *Landry v. Spitz,* 102 Conn. App. at 43 (noting that bad faith "may include 'evasion of the spirit of the bargain'") (citations omitted).  Thus, the Court denies DES's Motion to Dismiss Mr. Richards's claim of breach of the covenant of good faith and fair dealing.

### C.  COUNT THREE (UNJUST ENRICHMENT)

DES argues that Mr. Richards has failed to state an unjust enrichment claim because he has pled the existence of a valid, enforceable contract.  Mot. To Dismiss Br. 22, ECF No. 20.  It reasons that unjust enrichment is not available as a remedy where there is an enforceable express contract.  *Id.*  Mr. Richards counters that he made his claim in the alternative, in case the Court voids or otherwise finds the contract between DES and its subscribers invalid.  Opp. Br. 19-20, ECF No. 29.

"'[L]ack of a remedy under [a] contract is a precondition for recovery based upon unjust enrichment.'" *Alstom Power, Inc. v. Schwing Am., Inc.*, Civil No. 3:04cv1311 (JBA), 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) (quoting *Gagne v. Vaccaro*, 255 Conn. 390, 401 (2001)). A plaintiff, therefore, cannot plead a claim of unjust enrichment if he also pleads the existence of an express contract. *See id.* at *5-6; *Levy v. World Wrestling Entm't, Inc.,* Civil Action No. 3:08-01289 (PCD), 2009 WL 455258, at *2-3 (D. Conn. Feb. 23, 2009) (granting a motion to dismiss on an unjust enrichment claim and finding that an unjust enrichment claim could not be pled simultaneously with allegations indicating the existence of a valid, express contract) (citation omitted) ; *see also Meaney v. Conn. Hosp. Ass'n, Inc.,* 250 Conn. 500, 517-18 (1999) ("It is often said that an express contract between parties precludes recognition of an implied-in-law contract governing the same subject matter.") (citations and internal quotation marks omitted). Mr. Richards has not claimed that the contract is void, illusory or otherwise unenforceable; he also has not alleged facts in support of these legal conclusions. Thus, he has failed to allege facts necessary for an unjust enrichment claim and the claim must be dismissed without prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Defendant's Motion to Dismiss on the unjust enrichment claim and the unfair trade practices claim brought under the Massachusetts statute, without prejudice.  The rest of the motion is **DENIED**.


      **SO ORDERED** this 4th day of August 2015, at Bridgeport, Connecticut.


          /s/ Victor A. Bolden
          Victor A. Bolden
          United States District Judge